# EXHIBIT 3

# INDEPENDENT DIRECTOR SERVICE AGREEMENT

This INDEPENDENT DIRECTOR SERVICE AGREEMENT (this "**Agreement**") is made as of January 31, 2021 (the "**Effective Date**") by and among Easterday Ranches, Inc., a Washington corporation (the "**Company**" or the "**Debtor**"), and R. Todd Neilson, an individual (the "**Director**"). Each of the Company and the Director individually may be referred to as a "**Party**" and collectively as the "**Parties**".

## RECITALS

WHEREAS, the Company and various affiliates intend to commence voluntary proceedings under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Cases");

WHEREAS, in connection with the Bankruptcy Cases, the Company desires to appoint the Director to serve as an independent director on the board of directors of the Company; and

WHEREAS, the Parties desire to enter into this Agreement to reflect the terms and conditions of the Director's service as a director of the Debtor.

NOW, THEREFORE, based on the foregoing premises, and for good and valuable consideration, the sufficiency and adequacy of which are hereby acknowledged, the Parties hereto agree as follows:

1. <u>Acknowledgement and Acceptance</u>. Director hereby acknowledges and accepts his appointment as the independent director of the Company. The Parties agree that the Director's appointment was effective as of the Effective Date. The Director agrees to serve as an independent director of the Company, subject to the terms of this Agreement.

2. <u>Term</u>. The term of this Agreement shall be from the Effective Date until the earliest to occur of (i) thirty (30) days following the closing of any sale of substantially all of the assets of Debtor's estate pursuant to 11 U.S.C. Section 363 (the "**Sale Effort**"), (ii) the effective date of any Chapter 11 plan confirmed in the Debtor's Chapter 11 case (the "**Plan**"), (iii) the Director's resignation or removal, and (iv) the Director's death or disability (the "**Term**"). Nothing contained in this Agreement shall be construed to require the Director to serve as independent director for the Company for any definite term and the Director shall have the right to resign at any time.

3. <u>Responsibilities of the Independent Director</u>.

(a) The Director shall perform such duties as shall be usual and customary for independent directors and shall also perform those duties and fulfill those obligations as set forth in this Agreement and the Resolutions.

(b) The board of directors of the Debtor shall adopt resolutions (the "**Resolutions**"), in form and substance reasonably acceptable to Director, within three (3) business days of the Effective Date of this Agreement. The Resolutions shall, among other things, (i) appoint Director as an independent director of the Debtor; and (ii) approve this Agreement and authorize the officers of the Debtor to enter into this Agreement on behalf and in the name of the Debtor.

(c) The Director represents that, to the best of Director's knowledge, information, and belief, (i) Director has not represented the Company in a legal, financial, or other capacity, (ii) the Director holds no claim against or interest in the Company, and (iii) Director is not currently representing any person or entity in connection with a matter in which that person or entity has an adverse interest to the Company.

4. <u>Compensation/Expenses</u>.

(a) In consideration of Director's services, as well as the Director's services in connection with serving as an independent director of Easterday Farms Partnership, the Company shall pay to Director a total fee of $20,000 per month for the Term of this Agreement (pro-rated as applicable for any partial month of service hereunder). The initial monthly fee (pro-rated for January, 2021) and pre-payment of the monthly fee for February, 2021 shall be paid within two (2) business days of the Effective Date. All subsequent monthly fees shall be paid on the first (1st) day of each calendar month thereafter commencing on March 1, 2021 and continuing each month thereafter during the Term of this Agreement as set forth herein. Each monthly payment shall be deemed earned by Director on the due date for such payment. For purposes of clarity, the Debtor agrees that all amounts due to Director under this Agreement (including all amounts paid or payable to the Debtor pursuant to paragraph 7 below) shall be treated as allowed expenses of administration in the Debtor's Chapter 11 case.

(b) The Debtor shall reimburse the Director for all reasonable and necessary out-of-pocket expenses and disbursements incurred in carrying out his duties and responsibilities as an independent director (including with respect to his duties and responsibilities under this Agreement), including reasonable attorneys' fees and costs.

(c) The Director shall have the right to retain, at the sole expense of the Debtor, independent counsel and advisors to advise on matters relating to this engagement and Director's service as an independent director. The Debtor will seek the retention and compensation of such counsel and advisors pursuant to sections 327(a) and 328 of the Bankruptcy Code.

(d) While the Director shall have the applicable fiduciary duties of a director under Washington law, the Parties agree that the Director will be treated as an independent contractor, and that this Agreement shall not create the relationship of employee and employer between the Director and the Debtor.

(i) Director agrees that Director will be solely responsible for the payment of all taxes owed by Director, including any required payments of estimated taxes, with respect to all amounts paid to Director under the terms of this Agreement. Except with respect to benefits under any insurance policy (including Directors' and Officers' insurance) of the Debtor, Director shall not be entitled to any employment benefits provided to the employees of the Debtor, including, paid leave or retirement benefits.

(ii) The Parties agree that the Debtor will file all information returns required to be filed with all applicable governmental agencies in connection with all fees paid to Director for each year or portion thereof during Term. For this purpose, Director shall provide a certification of Director's social security number to the Debtor on Internal Revenue Service Form W-9 prior to

any payment of fees to Director. The Debtor shall deliver to Director no later than the date prescribed by applicable law copies of all information returns filed by the Debtor with any federal, state or local taxing authority with respect to payments made to Director under this Agreement.

(iii) The Parties agree that if any law is enacted after the Effective Date that requires withholding of taxes or other amounts in connection with any payments to Director under this Agreement, Director will execute any forms or other instruments and take all actions that may be necessary in order to permit any such required withholding and the Debtor shall be permitted to withhold such amounts from any payments to Director.

(e) To the extent that amounts paid under this Section 4 are paid from any unencumbered assets of the Debtor, the amounts shall be paid on a pro rata basis with all other administrative expenses against that Debtor's estate that are paid from any such unencumbered assets.

5. <u>Confidential Treatment of Company Confidential Information</u>. In consideration of the Company's disclosure to Director of information that is confidential to the Company ("Confidential Information"), Director agrees that this Agreement will apply to all Confidential Information, in any form whatsoever, disclosed or made available to Director concerning the Company and it's affiliates; provided, however, that "Confidential Information" does not include information that (i) is already lawfully known to the Director at the time of its disclosure to the Director by the Company, (ii) is or becomes generally available to the public, other than as a result of a breach of the Director's obligations hereunder, (iii) is lawfully disclosed to the Director by a third party which is not, to the Director's knowledge, subject to a confidentiality agreement with the Company, (iv) is obtained by the Director through subpoena, discovery, or other formal legal proceedings, (v) the Company and the Director agree in writing is not confidential information or (vi) was independently developed by the Director without use of the Confidential Information. Except as otherwise provided herein, Director agrees at all times during the Term through the first anniversary of the expiration of the Term: (i) to hold Confidential Information in strict confidence (ii) not to disclose Confidential Information to any third parties; and (iii) not to use any Confidential Information for any purpose except for the Approved Purposes. Director may disclose the Confidential Information to its agents, advisors, affiliates and representatives with a bona fide need to know ("Representatives"), but only to the extent necessary for the Approved Purposes or as necessary to enforce its rights under this Agreement. Director agrees to obtain written agreement by such Representatives not to disclose such Confidential Information to third parties without the prior written permission of the Company. Director will, at all times, remain liable under the terms of this Agreement for any unauthorized disclosure or use by any of its Representatives of Confidential Information provided to such Representatives by Director.

6. <u>Exempted Disclosure</u>. The foregoing restriction on the use and nondisclosure of Confidential information will not include information which is required or requested to be disclosed pursuant to judicial, regulatory or administrative process or court order, provided, that to the extent permitted by law, rule or regulation and reasonably practicable under the circumstances, Director gives the Company prompt notice of such required disclosure so that the Company may challenge the same.

7. <u>Indemnification</u>. In the event that Director becomes involved in any capacity in any action,

DOCS_NY:42147.1 00001/000                     2

22-80008-WLH    Doc 9-3    Filed 03/15/22    Entered 03/15/22 17:05:59    Pg 4 of 8

proceeding or investigation brought by or against any person, including members, stockholders, investors, employees or creditors of Company or any of its affiliates, in connection with or as a result of the Director's service as a director of Company or otherwise hereunder, Company will advance to and reimburse the Director for his reasonable, documented legal and other expenses (including the cost of any investigation and preparation) incurred in connection therewith provided, however, that if it is found in a final and non-appealable judgment by a court of competent jurisdiction that any loss, claim, damage or liability of the Director has resulted from the gross negligence, willful misconduct or bad faith of the Director, the Director shall repay such portion of the reimbursed amounts that is attributable to expenses incurred in relation to the act or omission of the Director which is the subject of such finding. Company also will indemnify and hold the Director harmless against any and all losses, claims, damages or liabilities to any such person in connection with or as a result of the Director's service as a director of Company or otherwise hereunder, except to the extent that any such loss, claim, damage or liability is found, in a final and non-appealable judgment by a court of competent jurisdiction, to have resulted from the gross negligence, willful misconduct or bad faith of the Director. Notwithstanding the language contained in this paragraph 7, indemnification for Director's conduct shall not exceed and shall be commensurate with the limit set forth in RCW 23B.08.510.

       8. <u>Insurance</u>. At all times during the Term, the Company shall have in force directors and officers liability insurance from an insurance carrier with an A.M. Best rating of (A-) or higher, in an amount and scope reasonable and customary for companies that are engaged in business similar to that of the Company and are reasonably acceptable to Director (the "Continuing Policy") that includes "Side A" coverage insuring directors and officers for claims against such directors and officers by reason of acts or omissions in their respective capacities as directors and officers, as applicable, including, without limitation, liabilities under securities laws or otherwise, whether claimed by a governmental unit or agency or private party, person, or entity. Upon notice from Director that Director is resigning from the Board (or substantially concurrently with Director's removal, if Director is removed from the Board), the Company shall obtain, maintain and fully pay for irrevocable "tail" insurance policies covering the Director as an insured person to the same extent and scope that the Company obtains such "tail" policy coverage for other directors of the Company, with respect to matters existing or occurring at or prior to such date (the "Tail Policy" and collectively, with the Continuing Policy, the "Insurance Policies"). The Company shall not cancel or change the Insurance Policies in any respect that would be adverse to the Director. The Company shall ensure that the Director meets the definition of an "Insured Person" under the Insurance Policies. The cost of the Insurance Policies shall be borne solely by the Company.

       9. <u>Independent Contractor</u>. It is understood and agreed that Director is acting as an independent contractor solely in his individual capacity and not as a representative of Berkley Research Group ("**BRG**"). Director's service in this regard will not cause the Company or the Board to become a client of BRG and, as such, BRG may represent clients in matters adverse to the Company. In carrying out the duties hereunder, Director will not be providing legal advice or charging legal or other fees on behalf of BRG or otherwise and his role will be confined to broad and experience-based questions of effective corporate governance. Nothing in this Agreement is intended to confer upon any other person (including members, employees or creditors of the Company) any rights or remedies hereunder or by reason hereof.

       10. <u>Notices</u>. All notices, consents, waivers, agreements or other communications hereunder shall be deemed effective or to have been duly given and made only if in writing and if (a) served by

personal delivery upon the Party for whom it is intended, (b) delivered by registered or certified mail, return receipt requested, (c) delivered by overnight air courier or (d) sent by email transmission, in each case, to such Party at the address set forth below, or such other address as may be designated in writing hereafter, in the same manner, by such Party:

**To the Company:**

> Easterday Ranches, Inc.
> Attn: Scott Avila
> Chief Restructuring Officer
> 633 W. 5th Street, 28th Floor
> Los Angeles, CA 90071
> Email: Savila@paladinmgmt.com

**To the Director:**

> R. Todd Neilson
> Berkeley Research Group
> 2029 Century Park E.
> Suite 1250
> Los Angeles, CA 90067
> Email: tneilson@thinkbrg.com

11. <u>Amendments; Waivers</u>. Any provision of this Agreement may be amended or waived if, and only if, such amendment or waiver is in writing and signed, in the case of an amendment, by the Company and the Director, or in the case of a waiver, by the Party against whom such waiver is intended to be effective, which writing shall specifically reference this Agreement, specify the provision(s) hereof that it is intended to amend or waive and further specify that it is intended to amend or waive such provision(s). No failure or delay by any Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

12. <u>Assignment</u>. This Agreement is for the benefit of the Parties and their respective successors, legal representatives and permitted assigns. Neither party may assign, in whole or in part (whether by operation of law or otherwise), this Agreement or any of its rights or obligations under this Agreement without the other Party's prior written approval, and any assignment or delegation without such prior written consent shall be null and void *ab initio*.

13. <u>Entire Agreement</u>. This Agreement contains the entire agreement of the Parties with respect to the subject matter hereof and supersedes all prior agreements, understandings and arrangements with respect to the subject matter hereof.

14. <u>Governing Law; Selection of Forum; Submission to Jurisdiction.</u> This Agreement, and any matter or dispute arising out of or related to this Agreement, shall be construed by, subject to and governed in accordance with the internal laws of the State of Washington without giving effect to conflict

DOCS_NY:42147.1 00001/000     4

22-80008-WLH    Doc 9-3    Filed 03/15/22    Entered 03/15/22 17:05:59    Pg 6 of 8

of laws or other principles that may result in the application of laws other than the internal laws of the State of California. Any legal action or proceeding with respect to this Agreement may be brought in the United States Bankruptcy Court, District of Washington, Eastern Division, and, by execution and delivery of this Agreement, each Party irrevocably consents to the service of process outside the territorial jurisdiction of such courts in any such action or proceeding, although nothing contained in this Agreement shall affect the right to serve process in any other manner permitted by applicable law. Each Party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in respect to any litigation directly or indirectly arising out of, under or in connection with this Agreement. Each Party (i) certifies that no representative, agent or attorney of any Party has represented, expressly or otherwise, that such Party would not, in the event of litigation, seek to enforce that foregoing waiver and (ii) acknowledges that it and the other Parties have been induced to enter into this Agreement, as applicable, by, among other things, the mutual waivers and certifications in this Section 14.

15. <u>Severability</u>. The provisions of this Agreement shall be deemed severable and the invalidity or unenforceability of any provision hereof shall not affect the validity or enforceability of the other provisions hereof. Whenever possible, each provision or portion of any provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement, or the application thereof to any Person or any circumstance, is invalid or unenforceable, (a) a suitable and equitable provision shall be substituted therefor to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision and (b) the remainder of this Agreement and the application of such provision to other Persons or circumstances shall not be affected by such invalidity or unenforceability, nor shall such invalidity or unenforceability affect the validity or enforceability of such provision, or the application thereof, in any other jurisdiction; <u>provided</u>, that, if any one or more of the provisions contained in this Agreement shall be determined to be excessively broad as to subject, activity, duration, or geographic scope, it shall be reformed by limiting and reducing it to the minimum extent necessary, so as to be enforceable under applicable law.

16. <u>Headings</u>. The titles and subtitles used in this Agreement are for convenience purposes only, and shall not be deemed to limit or affect any of the provisions hereof.

17. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts (including by facsimile or portable document format (.pdf)) for the convenience of the Parties hereto, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. No signature page to this Agreement evidencing a party's execution hereof shall be deemed to be delivered by such Party to any other Party hereto until such delivering Party has received signature pages from all Parties signatory to this Agreement.

18. <u>Survivability</u>. Notwithstanding anything to the contrary hereto, paragraphs 5-17 and this paragraph 18 shall survive the termination of this Agreement.

\* \* \*

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

**COMPANY:**         Easterday Ranches, Inc.

By: _____
Name: Scott Avila
Title: CRO

**DIRECTOR:**

By: _____
R. Todd Neilson