# EXHIBIT 11

# AMENDMENT NO. 1 TO
# EASTERDAY FARMS PARTNERSHIP AGREEMENT

This Amendment No. 1 to Partnership Agreement (this "Amendment") of Easterday Farms, a Washington general partnership (the "Partnership"), is entered into effective as of January 31, 2021, by (i) Karen L. Easterday and (ii) Cody A. Easterday and Debby Easterday, husband and wife (collectively, the "Parties"), for the purpose of amending the Easterday Farms Partnership Agreement dated October 27, 1999 (as the same heretofore may have been amended, modified, supplemented, or restated, the "Existing Partnership Agreement").

## RECITALS

A. The Existing Partnership Agrement was entered into on October 27, 1999, by and between (i) Gale A. Easterday and Karen L. Easterday, husband and wife and (ii) Cody A. Easterday and Debby Easterday, husband and wife.

B. On December 10, 2020, Gale A. Easterday died.

C. The Parties now desire to amend the Existing Partnership Agreement in the manner set forth herein.

## AGREEMENT

**FOR GOOD AND VALUABLE CONSIDERATION,** the validity and sufficiency of which is hereby expressly acknowledged, each of the Parties hereby agrees as follows:

1. Acknowledgements. Each of the Parties hereby acknowledges that:

    (a) The Partnership has not been dissolved by virtue of the death of Gale A. Easterday or otherwise, and has at all times since inception continued its existence as a general partnership under the Washington Revised Uniform Partnership Act.

    (b) (i) Karen L. Easterday has full power and authority to exercise any and all rights, powers and privileges of a partner of the Partnership with respect to the partnership unit formerly owned by Gale A. Easterday and Karen L. Easterday, husband and wife, and (ii) such partnership unit continues to possess a one-half ownership and a one-half responsibility obligation for all partnership matters.

    (c) All references to a "party" or "parties" in the Existing Partnership Agreement shall, notwithstanding the death of Gale A. Easterday, be deemed to include Karen L. Easterday, and any decisions requiring the joint approval of the parties, or words to similar effect, shall be deemed to have been duly made in accordance with the Existing Partnership and applicable law if approved jointly by Karen L. Easterday and by Cody A. Easterday and Debby Easterday, husband and wife.

2. Amendments. Section 5 of the Existing Partnership Agreement shall be amended and restated to read in full as follows, effective immediately:

    5. MANAGEMENT AND CONTROL.

        (a) Management by Directors. The Partners hereby delegate to the Directors all those rights and powers of the Partners necessary for the Directors to manage and

control the business and affairs of the Partnership. Rights and powers delegated to the Directors include, without limitation, the authority as Directors to oversee and to establish policies regarding the management, conduct and operation of the Partnership's business, and to do all things necessary and proper as Directors to carry out the objective and business of the Partnership as well as to exercise any other rights and powers expressly given to the Directors under this Agreement. The Partners intend that, to the fullest extent permitted by law, and except to the extent otherwise expressly provided in this Agreement, (1) each Director is vested with the same powers and authority on behalf of the Partnership as are customarily vested in each director of a Washington corporation. During any period in which the Partnership has no Directors, the Partners will manage and control such Partnership. Each Director will be the agent of the Partnership but will not, for any purpose, be a Partner. Notwithstanding any delegation described in this Section 5(a), no Person will cease to be a Partner of the Partnership and each such Person will continue to be liable as such and in no event will a Director be considered a Partner by agreement, estoppel or otherwise as a result of the performance of his or her duties under this Agreement or otherwise. The Partners hereby retain those rights, powers and duties that have not been delegated under this Agreement.

(b) Rights of Partners.

(i) Notwithstanding anything in this Agreement to the contrary, the Partners hereby retain all rights, duties and powers to manage the affairs of the Partnership that may not be delegated under Washington law, and that are not otherwise delegated by the Partner to the Directors or assumed by any Person under the terms of any agreement between the Partnership and such Person. Specifically, and without limitation, the Partners will retain full power and authority on behalf of and in the name of the Partnership, to call and conduct meetings of Partners at the Partnership's principal office or elsewhere as it may determine.

(iii) It is understood and agreed that the decisions on any matters as to which management has been retained by the Partners shall take place equally by the parties hereto. No Partner shall employ the capital or credit of the Partnership other than for Partnership business. All decisions on any matters as to which management has been retained by the Partners shall be made with the joint approval of the parties hereto. The Parties shall devote such portion of their respective time to the Partnership enterprise as may be necessary for the success of the Partnership, it being understood and agreed that the Partners shall contribute approximately equal time to the Partnership matters. There are two (2) equal partnership units each possessed of a one-half ownership and one-half responsibility obligation for all partnership matters. One partnership unit is owned and possessed by Karen L. Easterday and the estate of Gale A. Easterday and one partnership unit is owned and possessed by Cody A. Easterday and Debby Easterday, husband and wife.

(c) Number and Term of Directors.

(i) The number of Directors at the date of this Agreement is fixed at three (3). After the date hereof, the number of Directors will be fixed from time to time by the Directors then in office, which number may be greater, or lesser, than three (3), but no fewer than one (1), except that no reduction in the number of Directors will serve to effect the removal of any Director.

(ii) Each Director will serve for the duration of the term of the Partnership, unless his or her status as a Director is terminated sooner in accordance with this Agreement. If any vacancy in the position of a Director occurs, including by reason of an increase in the number of Directors as contemplated by this Agreement, the remaining Directors may appoint an individual to serve in that capacity.

(iii) If no Director remains, any Partner may promptly call a meeting of the Partners, to be held within 30 days after the date on which the last Director ceased to act in that capacity, for the purpose of determining whether to continue the business of the Partnership and, if the business is to be continued, approving the appointment of the requisite number of Directors. If the Partners determine at the meeting not to continue the business of the Partnership, or if the approval of the appointment of the requisite number of Directors is not approved within 30 days after the date on which the last Director ceased to act in that capacity, then such Partnership will be dissolved in accordance with applicable law and the assets of such Partnership will be liquidated and distributed in accordance with this Agreement.

(iv) The status of a Director will terminate (1) if the Director dies; (2) if the Director resigns as a Director; or (3) if the Director is removed in accordance with Section 5(b)(v) of this Agreement.

(v) Any Director may be removed only "for cause" as determined by a majority of the other Directors.

(d) <u>Committees</u>. The Directors may establish and maintain committees of the Board of Directors, having such duties, powers, authorities and functions as the Board of Directors may delegate thereto.

(e) <u>Compensation</u>. The Directors will receive compensation for their services as determined by the Board of Directors. In addition, the Partnership will reimburse the Directors for reasonable out-of-pocket expenses incurred by them in performing their duties with respect to the Partnership.

(f) <u>Acts by the Board</u>. Unless provided otherwise in this Agreement, the Directors will act only: (1) by the affirmative vote of a majority of the Directors present at a meeting duly called at which a quorum of the Directors is present either in person or by conference telephone or other communications equipment by means of which all Persons participating in the meeting can hear each other; or (2) by unanimous written consent of all of the Directors without a meeting.

3

(g) <u>Meetings of the Board</u>. The Directors may designate from time to time a Director or an officer of the Partnership who will preside at all meetings. Meetings of the Directors may be called by the Chairman of the Board of Directors, if any, any Chief Restructuring Officer, or any two Directors, and may be held on any date and at any time and place determined by the Directors. Each Director will be entitled to receive written notice of the date, time and place of a meeting within a reasonable time in advance of the meeting. Notice need not be given to any Director who attends a meeting without objecting to the lack of notice or who executes a written waiver of notice with respect to the meeting. A majority of the Directors then in office will constitute a quorum at any meeting of Directors.

(h) <u>Officers</u>. The Directors may appoint from time to time agents and employees of the Partnership who will have the same powers and duties on behalf of the Partnership as are customarily vested in officers of a corporation incorporated under Washington law, or such other powers and duties as may be designated by the Directors, in their sole discretion, and designate them as officers or agents of the Partnership by resolution of the Directors specifying their titles or functions.

(i) <u>Restructuring Authority</u>. The Directors will, among their powers, have the authority in their sole discretion to approve the commencement by the Partnership of voluntary proceedings under chapter 11 of Title 11 of the United States Code and to cause the Partnership to engage one or more Chief Restructuring Officers to provide advice and management to the Partnership under their direction. As directed by the Directors, the Partnership will have the authority to execute, deliver and perform any contract or agreement with the Chief Restructuring Officer(s) to provide advice and management to the Partnership.

(j) <u>Time Commitment</u>. None of the Directors will be required to devote full time to the affairs of the Partnership, but each will devote such time as each may reasonably be required to perform its obligations under this Agreement. The Directors and any Affiliate of any Director may engage in or possess an interest in other business ventures or commercial dealings of every kind and description, independently or with others. No Partner will have any rights in or to such activities of any of the Directors or any Affiliate of any Director or any profits derived from these activities.

(k) <u>Fiduciary Duties</u>. To the extent that at law or in equity the Directors have duties (including fiduciary duties) and liabilities relating to those duties to the Partnership or to any Partner, any such Director acting under this Agreement will not be liable to the Partnership or to any Partner or other Person bound by this Agreement for its good faith reliance on the provisions of this Agreement. The provisions of this Agreement, to the extent that they restrict the duties and liabilities of the Directors otherwise existing at law or in equity, are agreed by the Partners to replace the other duties and liabilities of the Directors.

(l) <u>Duty of Care</u>. The Directors, including any employee or agent of any of them, will not be liable to the Partnership or to any of the Partners for any loss or damage occasioned by any act or omission in the performance of the Person's services under this Agreement, in the absence of a final judicial or arbitral decision on the merits from which no further right to appeal may be taken that the loss is due to an act or omission of the Director constituting willful misfeasance, bad faith, gross negligence or reckless disregard of the Director's duties under this Agreement.

4

22-80008-WLH    Doc 9-11    Filed 03/15/22    Entered 03/15/22 17:05:59    Pg 5 of 10

(m) <u>Indemnification</u>.

(i) To the fullest extent permitted by law, the Partnership will, subject to Section 5(m)(iii) of this Agreement, indemnify each Director (and his employer, executors, heirs, assigns, successors or other legal representatives) (each such Person being referred to as an "indemnitee") against all losses, claims, damages, liabilities, costs and expenses arising by reason of being or having been a Director of the Partnership, or the past or present performance of services to the Partnership by the indemnitee, except to the extent that the loss, claim, damage, liability, cost or expense has been finally determined in a judicial or arbitral decision on the merits from which no further right to appeal may be taken in any such action, suit, investigation or other proceeding to have been incurred or suffered by the indemnitee by reason of willful misfeasance, bad faith, gross negligence, or reckless disregard of the duties involved in the conduct of the indemnitee's office. These losses, claims, damages, liabilities, costs and expenses include, but are not limited to, amounts paid in satisfaction of judgments, in compromise, or as fines or penalties, and counsel fees and expenses incurred in connection with the defense or disposition of any action, suit, investigation or other proceeding, whether civil or criminal, before any judicial, arbitral, administrative or legislative body, in which the indemnitee may be or may have been involved as a party or otherwise, or with which such indemnitee may be or may have been threatened, while in office or thereafter. The rights of indemnification provided under this Section 5(m) are not to be construed so as to provide for indemnification of an indemnitee for any liability (including liability under U.S. Federal securities laws which, under certain circumstances, impose liability even on Persons that act in good faith) to the extent (but only to the extent) that indemnification would be in violation of applicable law, but will be construed so as to effectuate the applicable provisions of this Section 5(m).

(ii) Expenses, including counsel fees and expenses, incurred by any indemnitee (but excluding amounts paid in satisfaction of judgments, in compromise, or as fines or penalties) may be paid from time to time by the Partnership in advance of the final disposition of any action, suit, investigation or other proceeding upon receipt of an undertaking by or on behalf of the indemnitee to repay to the Partnership amounts paid if a determination is made that indemnification of the expenses is not authorized under Section 5(m)(i) of this Agreement, so long as (1) the indemnitee provides security for the undertaking, (2) the Partnership is insured by or on behalf of the indemnitee against losses arising by reason of the indemnitee's failure to fulfill his, her or its undertaking, or (3) a majority of the Directors (excluding any Director who is either seeking advancement of expenses under this Agreement or is or has been a party to any other action, suit, investigation or other proceeding involving claims similar to those involved in the action, suit, investigation or proceeding giving rise to a claim for advancement of expenses under this Agreement) or independent legal counsel in a written

5

opinion determines, based on a review of readily available facts (as opposed to a full trial-type inquiry), that reason exists to believe that the indemnitee ultimately will be entitled to indemnification.

(ii) As to the disposition of any action, suit, investigation or other proceeding (whether by a compromise payment, pursuant to a consent decree or otherwise) without an adjudication or a decision on the merits by a court, or by any other body before which the proceeding has been brought, that an indemnitee is liable to the Partnership or its Partners by reason of willful misfeasance, bad faith, gross negligence, or reckless disregard of the duties involved in the conduct of the indemnitee's office, indemnification will be provided in accordance with Section 5(m) of this Agreement if (1) approved as in the best interests of the Partnership by a majority of the Directors (excluding any Director who is either seeking indemnification under this Agreement or is or has been a party to any other action, suit, investigation or proceeding involving claims similar to those involved in the action, suit, investigation or proceeding giving rise to a claim for indemnification under this Agreement) upon a determination, based upon a review of readily available facts (as opposed to a full trial-type inquiry), that the indemnitee acted in good faith and in the reasonable belief that the actions were in the best interests of the Partnership and that the indemnitee is not liable to the Partnership or its Partners by reason of willful misfeasance, bad faith, gross negligence, or reckless disregard of the duties involved in the conduct of the indemnitee's office, or (2) the Directors secure a written opinion of independent legal counsel, based upon a review of readily available facts (as opposed to a full trial-type inquiry), to the effect that providing indemnification hereunder to such indemnitee would not result in protecting the indemnitee against any liability to the Partnership or its Partners to which the indemnitee would otherwise be subject by reason of the indemnitee's willful misfeasance, bad faith, gross negligence, or reckless disregard of the duties involved in the conduct of the indemnitee's office.

(iv) Any indemnification or advancement of expenses made in accordance with this Section 5(m) will not prevent the recovery from any indemnitee of any amount if the indemnitee subsequently is determined in a final judicial or arbitral decision on the merits in any action, suit, investigation or proceeding involving the liability or expense that gave rise to the indemnification or advancement of expenses to be liable to the Partnership or its Partners by reason of willful misfeasance, bad faith, gross negligence, or reckless disregard of the duties involved in the conduct of the indemnitee's office. In any suit brought by an indemnitee to enforce a right to indemnification under this Section 5(m), it will be a defense that the indemnitee has not met the applicable standard of conduct described in this Section 5(m). In any suit in the name of the Partnership to recover any indemnification or advancement of expenses made in accordance with this Section 5(m), such Partnership will be entitled to recover the expenses upon a final adjudication from which no further right of appeal may be taken. In any suit brought to enforce a right to indemnification or to recover any indemnification or

6

22-80008-WLH    Doc 9-11    Filed 03/15/22    Entered 03/15/22 17:05:59    Pg 7 of 10

advancement of expenses made in accordance with this Section 5(m), the burden of proving that the indemnitee is not entitled to be indemnified, or to any indemnification or advancement of expenses, under this Section 5(m) will be on the Partnership (or any Partner acting derivatively or otherwise on behalf of the Partnership or its Partners).

(v) An indemnitee may not satisfy any right of indemnification or advancement of expenses granted in this Section 5(m) or to which he, she or it may otherwise be entitled except out of the assets of the Partnership, and no Partner will be personally liable with respect to any such claim for indemnification or advancement of expenses.

(vi) The rights of indemnification provided in this Section 5(m) will not be exclusive of or affect any other rights to which any Person may be entitled by contract or otherwise under law. Nothing contained in this Section 5(m) will affect the power of the Partnership to purchase and maintain liability insurance on behalf of any Director or other Person.

(vii) The Partnership may, with consent of the Directors, enter into agreements indemnifying Persons providing services to the Partnership to the same, lesser or greater extent as set out in this Section 5(m).

(n) <u>Definitions</u>. In this Agreement, the following terms have the following meanings:

(i) "Affiliate" means, with respect to any Person, another Person who has control of such Person, or another Person in whom such Person has control, or a Person with whom such Person is under common control.

(ii) "Directors" means those natural Persons designated as "Directors" in accordance with this Agreement who are delegated the authority provided for in this Agreement and includes Craig A. Barbarosh, R. Todd Neilson and Thomas Saunders V, or any other natural Persons who, from time to time after the date of this Agreement, become directors in accordance with the terms and conditions of this Agreement.

(iii) "Partner" means a partner of the Partnership.

(iv) "Partnership" means Easterday Farms, a Washington general partnership.

(v) "Person" means any individual, entity, corporation, partnership, limited liability company, joint stock company, trusts, estate, joint venture, or unincorporated organization.

7

3. **Full Force and Effect**. Except as amended by this Amendment, the Existing Partnership Agreement shall remain in full force and effect. Unless the context otherwise requires, any other document or agreement that refers to the partnership agreement of the Partnership shall be deemed to refer to the Existing Partnership Agreement after giving effect to this Amendment (and any other amendments to the Partnership Agreement made from time to time pursuant to its terms).

4. **Successors and Assigns**. This Amendment shall inure to the benefit of and be binding upon the successor(s) and assign(s) of the party hereto.

5. **Governing Law**. This Amendment shall be governed by and construed in accordance with the internal laws of the State of Washington, without regard to the principles of conflicts of laws.

*[Signature page follows]*

The undersigned hereby agrees, acknowledges and certifies that the foregoing Amendment No. 1 constitutes an amendment to the partnership agreement of Easterday Farms, a Washington general partnership, as of the date first set forth above.

_____
KAREN L. EASTERDAY

_____
CODY A. EASTERDAY

_____
DEBBY EASTERDAY

*[SIGNATURE PAGE TO*
*AMENDMENT NO. 1 TO PARTNERSHIP AGREEMENT OF*
*EASTERDAY FARMS]*